**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

RALPH G. SACHS,                               )
                                              )
                    Plaintiff,                )
                                              )        Case No.: 00-73070
v.                                            )
                                              )
                                              )        Hon. ROBERT H. CLELAND
UNITED STATES OF AMERICA,                     )
acting through the INTERNAL                   )
REVENUE SERVICE, and                          )
QUICK and REILLY, INC., a                     )
New York corporation,                         )
                                              )
                    Defendants.               )

---

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT UNITED STATES'**
**MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6) AND ALTERNATIVE**
**MOTION FOR LEAVE TO AMEND**


For reasons more thoroughly expressed in the accompanying brief, Plaintiff, Ralph G.

Sachs, by and through counsel, Abraham & Rose, P.L.C., hereby expresses its opposition to

Defendant United States' Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6), and

alternatively requests appropriate leave to amend.


Dated: _10-31-00_

                                              Jerry R. Abraham (P45768)
                                              Attorney for Plaintiff

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

RALPH G. SACHS,                              )
                                             )
        Plaintiff,                  )
                                             )        Case No.: 00-73070
v.                                           )
                                             )
                                             )        Hon. ROBERT H. CLELAND
UNITED STATES OF AMERICA,                    )
acting through the INTERNAL                   )
REVENUE SERVICE, and                         )
QUICK and REILLY, INC., a                    )
New York corporation,                        )
                                             )
        Defendants.                 )

**PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT UNITED STATES'**
**MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)**

*Concise Statement of the Issue*

      Whether Plaintiff, Ralph G. Sachs, has failed to state a claim upon which relief can be

granted, when he has made allegations of Defendant United States' repeated violations of

administrative and judicial law as referenced by 26 U.S.C. § 7433. This is in response to

Defendant United States' Motion to Dismiss Pursuant to Rule 12(b)(6) of the Federal Rules

of Civil Procedure.

*Standard of Review*

On or about October 18, 2000, Defendant United States of America filed a Motion to

Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("failure to state a

claim upon which relief can be granted"). A court should dismiss a suit under Rule 12(b)(6) only

if "it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which

would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Crt. 99, 102 (1957).

"[T]he court should deny the motion unless it is clear that the plaintiff can prove no set of facts

in support of her claim that would entitle her to relief." Miller v. Currie, 50 F.3d 373, 377 (6th

Cir. 1995). All "allegations of the complaint should be construed favorably to the pleader."

Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S.Crt. 1683, 1686 (1974).


## **ARGUMENT**


*Introduction*

In reading the first sentence of the "General Overview" to the Argument component of

the government's brief, it becomes readily apparent that Defendant United States has either

chosen to ignore the underlying claim in Plaintiff's Complaint or it has totally misunderstood it.

Nowhere in its administrative claim, Complaint, or any subsequent filing, pleading, or

correspondence has Plaintiff sought a refund of tax under 26 U.S.C. § 7422.


2

Rather, Plaintiff has sought "actual, direct economic damages" under 26 U.S.C. § 7433(b) resulting from Defendant United States' unauthorized collection activities, and this statute provides that it is to be the "exclusive remedy" for allowable recovery. The tax liability was fully paid by this unauthorized collection. Therefore, while the amount sought represents the amount of "actual, direct economic damages" allowed by the statute, it also happens to equal the full amount of the taxpayer's liability. To argue that 'since Plaintiff was delinquent in his taxes the United States was justified in violating the law to obtain payment,' is to argue the civil equivalent of 'the defendant legally confessed and is guilty of a crime [the criminal equivalent of a valid assessment] so the government can violate his rights to obtain a conviction' [the criminal equivalent of the illegal collection activity at issue here].

### *Revenue Ruling 75-355 and Internal Revenue Manual Section § 5.11.6.8(3)*

The government advances two theories towards the dismissal of this portion of Plaintiff's claim. It first contends that the Revenue Ruling is inapplicable in the present matter involving the seizure of negotiable instruments, and it then contends that violations of the Internal Revenue Manual ("Manual") or of any Revenue Ruling do not rise to such level to constitute actionable grounds under 26 U.S.C. § 7433. This latter contention will be addressed first.

Section 7433 of the Internal Revenue Code provides for damages for unauthorized collection activities. The statute is broad in scope and allows for recovery for intentional or even negligent violations of "**any** provision of this title, or **any** regulation promulgated under this title" relating to the **collection** of tax. 26 U.S.C. § 7433(a) (Emphasis added).

3

While Chapter 64 of the Internal Revenue Code provides many guidelines relating to the authorized methods of tax collection, it cannot and does not address every legal issue relevant to these matters. For example, as directly relevant in this case, 26 U.S.C. § 6331(b) defines "levy" to include "the power of distraint and seizure **by any means**." (Emphasis added). Clearly, even the United States will admit that a statutory allowance for seizure "by any means" cannot be taken literally. There are abundant statutory and Constitutional safeguards (beyond those enumerated in the Internal Revenue Code) which limit and explain the proper procedures and techniques.

Treasury Regulations, Revenue Rulings, and Manual provisions are examples of that body of law which support the provisions of the Code. These are not new enactments unrelated to the law as loosely defined within the Code. They are detailed explanations of well defined bodies of law which apply to particular and unique circumstances. Irrelevant provisions unrelated to the Code may arguably be excluded from coverage under 26 U.S.C. § 7433, but clearly defined applications of highly relevant law may not. Despite the strict interpretation of the Code, the United States does not have statutory *carte blanche* to literally seize items "by any means." Rather, they are bound to follow the dictates as will be more thoroughly explained below. Consequently, violations of circumstance specific Revenue Rulings or Manual provisions are in reality violations of the broader statutory and/or Constitutional guidelines which they implicate.

4

This conclusion brings attention on the former argument advanced by the United States. Revenue Ruling 75-355, 1975-2 C.B. 478 and Manual § 5.11.6.8(3) explain the proper procedures for seizure of negotiable instruments. A negotiable instrument has inherent value. Unlike a standard bank account (which is essentially a debtor - creditor relationship between a depositor and the bank to whom he "lends" his money), a stock certificate cannot be converted to cash until it is actually presented for payment. A withdrawal from a bank account does not require the withdrawal of specific dollar bills, but the redemption of a stock certificate requires the specific instrument. See, United States v. Bowery Savings Bank, 297 F.2d 380 (2d Cir. 1961).

For this reason, the United States has determined that "A levy by the Government on funds represented by a negotiable [instrument] must be made by presentation of the negotiable [instrument] and the surrender of such certificate to the maker." Rev. Rul. 75-355, 1975-2 C.B. 478. The Revenue Ruling distinguishes this procedure from a standard requirement to issue a Notice of Levy to reach a bank account. A mere Notice of Levy is sufficient for an intangible asset, but actual seizure is required for a negotiable instrument. The Manual - uncontested by the United States' brief - confirms this requirement.

The Internal Revenue Service is clearly internally bound to follow its Revenue Rulings. Rev. Proc. 89-14, 1989-1 C.B. 814. Even the United States admits in the present case that they are to be afforded "considerable weight." See Defendant's brief at Footnote 2. The Manual not only provides a comprehensive list of standard procedures for most collection-related

5

circumstances, but even veteran Internal Revenue Service employees may be terminated for violations of Code, Treasury Regulation, or these Manual provisions which the United States now seeks to minimize. See, Section 1203, Internal Revenue Service Restructuring and Reform Act of 1998.

Section 7433 of the Internal Revenue Code broadly targets unauthorized collection activities. It is not logical for Congress to address only those specific and comparatively few issues contained in the Code and the Treasury Regulations while ignoring the significant bodies of law applicable to the very same topics. At issue here are not freestanding obscure provisions offering suggested guidance to Revenue Officers. But these procedures apply the Code and its Regulations and address the fundamental core of federal tax collection practice and procedures. To allow the Internal Revenue Service to violate those standards to which it has been bound is to contravene the clear intent of statutorily mandated accountability. Nevertheless, should this Court so direct, Plaintiff would request leave to specifically plead these violations of Revenue Rulings, Manual provisions, or the Fourth Amendment (following section) as violations of the underlying statute, 26 U.S.C. § 6331.

***Fourth Amendment***

If the United States contends that Revenue Rulings and Manual provisions are not Code sections or Treasury Regulations and are not covered within Section 7433, then the Fourth Amendment should also fall outside its purview. In other words, the government contends that

6

Congress only allowed redress for statutory or regulatory violation but not for clear violations of Constitutional law. This must be flawed.

The United States is puzzled at how Plaintiff can claim a Fourth Amendment violation while still maintaining that the United States should have physically seized these securities. The easiest way to clarify this issue is to explain what the government should have done and to compare that ideal to what actually occurred. The violation of the Fourth Amendment should be readily apparent within this gap between these two ends of the spectrum.

As evidenced by the aforementioned Revenue Ruling and Manual provision, the United States should have physically seized these securities. The levy and seizure documents attached to the Complaint verify this desire to levy the actual documents. They were informed of the proper method of practice and apparently initially sought to comply with their requirements. However, it is at this point that the hastily approaching deadline of the collection statute of limitations began to cause some mistakes.

In order to gain entry to physically seize these instruments, the government needed to obtain a writ of entry pursuant to GM Leasing Corp. v. United States, 429 U.S. 338 (1977). The actual physical location of the securities is a private area within which a taxpayer has an expectation of privacy, and the United States should agree that a writ would have been needed to enter it. With a proper writ of entry and actual physical seizure, this case would not have proceeded. However, mailing documents and forcing the liquidation of an item which should

7

have been seized should be no different than mailing a document and asking the taxpayer to turn

over a vehicle he has parked in his garage. Both items are inherently valuable assets requiring

proper authority and proper seizure techniques.

The United States' conduct falls far short of this standard. Once again in drawing a

parallel to a criminal case, they constructively seized assets without a warrant. By forcing Quick

and Reilly to liquidate these securities they effectively seized them right out of Plaintiff's

account. They began by presenting levy and seizure documents, and they ended with a check in

full satisfaction of the outstanding liability. The case file indicates that in the interests of time a

lien was never refiled so appeal rights would not have to be given, so it may be safe to conclude

that this forced liquidation occurred to bypass the need for obtaining a writ of entry.

By constructively forcing this liquidation to obtain a check rather than the instruments,

the United States ran afoul of the Fourth Amendment. Granted there was no physical entry on

the Plaintiff's premises, but the securities were seized on behalf of the government and were

liquidated. This is a constructive seizure obviously intended to obviate the need for a writ of

entry, and while no Revenue Officer took physical possession of the securities, they were clearly

seized and sold on the government's behalf. They provided Quick and Reilly with a Form 2433

("Notice of Seizure"). It seems incongruent that the United States can claim an effective seizure

for purposes of collection without at least raising any Fourth Amendment issues.

8

This violation of the Constitution - as it provides guidelines for proper seizure - gives rise to another violation of Section 7433. While the United States is correct that a strict <u>Bivens</u> action must be pursued against the individual, the underlying Constitutional violation is actionable under Section 7433. Thus, Plaintiff would ask that if this Court excludes the Constitution from the scope of Section 7433, it should be given leave to amend to address all specific individuals.

### *Federal Tax Lien*

The lack of a federal tax lien against Plaintiff raises two distinct issues. First, the Manual dictates that a valid federal tax lien is a prerequisite to enforced collection. I.R.M. § 56(12)9(1). The violation of a Manual provision - as the Revenue Officer admittedly wished to avoid the granting of new appeal rights which must accompany such a lien filing - is in and of itself an unauthorized collection action under Section 7433. It is illogical that the Revenue Officer's justifiable concern over the appeal rights which accompany a lien would carry more statutory weight than the underlying lien itself.

Second, there is a fundamental difference between the overall lack of a lien and the release of an existing lien. In theory, a lien must precede a levy as a judgment precedes a garnishment. A lien gives the government its status of (or sometimes superior to) a judgment creditor. Ordinarily, this issue is not a genuine concern because the government is given a statutory lien under 26 U.S.C. § 6321 once it has given the taxpayer its prerequisite notice and demand.

9

This statutory lien under Section 6321 is commonly called a "silent" lien until proper notice is given. A Notice of Federal Tax Lien ("NFTL") is filed under 26 U.S.C. § 6323(f), and thus establishes appropriate priorities among the various creditors. This NFTL contains a statement that as of a particular date indicated on its face, the selfsame NFTL is to act as a release of lien document pursuant to 26 U.S.C. § 6325. Once this lien has been released, the entire statutory lien can no longer exist. The only way to properly revive such a lien is to file a revocation of release pursuant to 26 U.S.C. 6325(f)(2). Such a procedure was never followed.

Therefore, there is a fundamental difference between the mere failure to file an NFTL and the release of a valid one. Without any filing, the United States is still protected as a statutory lienholder, but loses some battles of legal priority. See, 26 U.S.C. § 6323(a). The NFTL provides requisite notice and does afford the United States certain priority status. However, when such a lien is released, the statutory as well as filed liens are completely released. Unless and until such a release is properly revoked, there is no legal basis to equate the United States to the position of judgment creditor, and there is no legal basis to allow a levy.

Consequently, the enforced collection against a taxpayer without any statutory lien is an unauthorized collection action for two reasons. First, there is a violation of a Manual provision which explains proper levy techniques. This is the sort of action that should be included in Section 7433's broad scope of collection accountability. Furthermore, the levy without a lien is premature and contrary to law.

10

***Summons***

Once again, the United States either ignores or completely misunderstands the fundamental nature of Plaintiff's claims. Plaintiff does not seek to quash a summons, nor does it seek damages for the failure to receive one. What the Plaintiff alleges and what the United States does not deny is the patent unreasonableness and clear statutory violation found in the mandate of a one day required turnaround time. The Code requires a minimum of ten days, and the Revenue Officer afforded less than one. 26 U.S.C. § 7605(a). The Code requires personal service (or registered or certified mail), but this Revenue Officer faxed it. 26 U.S.C. § 7603.

Plaintiff alleges these facts in its Complaint because it is another example of an unauthorized collection action. It is another example of a Revenue Officer overly worried about an impending statutory expiration date. It is another example of the United States "leaning" on Quick and Reilly to learn more about the securities it should have physically seized but instead whose liquidation was coerced. Plaintiff does not seek to have this summons quashed nor is it complaining about its lack of proper service. Plaintiff cites these as clear statutory violations for which it is entitled damages. The United States cannot seek summary dismissal for every allegation because they repeatedly seek to misclassify the many cases of alleged misconduct.

***Notice of Seizure***

A proper Notice of Seizure (Form 2433) was never afforded the Plaintiff nor the possessor of property. The United States claimed to have physically seized "Various Negotiable

11

Instruments" (see attachment to Complaint), but instead walked away with a check. Where was the proper notice for the item actually seized? At worst, this raises factual questions beyond the scope of a Motion to Dismiss under Rule 12(b)(6). The notice must contain "an account of the property seized," and there is no evidence of any such notice. 26 U.S.C. § 6335(a).

### *Statute of Limitations*

As an introductory matter, the doctrine of variance is inapplicable to the present matter. Plaintiff's mandatory administrative claim clearly referred to the passing of the COLSED (Collection Statute Expiration Date). While such a claim is not drafted with the specificity of a pleading, Plaintiff's claim clearly includes such language. Once again, at best this creates factual questions beyond the scope of this motion.

As for the underlying issue, the United States is correct in stating that the COLSED was July 4, 1999 and that a timely proceeding was filed on July 1, 1999. However, the point it thoroughly misses is that a valid levy **never** occurred on this case. The COLSED has now passed without the proper levy as described in the statute. Levy required physical seizure and distraint, and the United States never physically seized any negotiable instrument. The funds they eventually received represent the product of a string of violations when they knew of the proper course of conduct well within the statutory time frame.

## CONCLUSION

For reasons expressed herein, referencing the assorted unauthorized collection actions,

Plaintiff alleges that Defendant United States' Motion to Dismiss be denied or leave to amend be

granted.

Respectfully submitted,

Dated: _10-31-00_

Jerry R. Abraham (P45768)
Abraham & Rose, P.L.C.
30500 Northwestern Hwy., Suite 410
Farmington Hills, MI 48334
Tel: (248) 539-5040

13

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

RALPH G. SACHS,                        )
                                       )
      Plaintiff,               )
                                       )   Case No.: 00-73070
v.                                     )
                                       )
                                       )   Hon. ROBERT H. CLELAND
UNITED STATES OF AMERICA,              )
acting through the INTERNAL            )
REVENUE SERVICE, and                   )
QUICK and REILLY, INC., a              )
New York corporation,                  )
                                       )
      Defendants.              )

## PROOF OF SERVICE

It is hereby certified that copies of PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT UNITED STATES' MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6) and PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT UNITED STATES' MOTION TO DISMISS PURSUANT TO FED. CIV. P. 12(b)(6) were served upon all attorneys of record at their addresses indicated on the pleadings on the date indicated below by first class mail, postage prepaid.

Dated: 10-31-00

Jerry R. Abraham (P45768)
Attorney for Plaintiff